## GREENE v. SMITH.
### No. 2094.

Court of Civil Appeals of Texas. Eastland.
Jan. 31, 1941.

H. J. Brice and Ben F. Thorpe, both of Snyder, for appellant.

Morris G. Watson, of Rotan, for appellee.

FUNDERBURK, Justice.

This suit, brought by John L. Greene, against Bettie F. Howell and husband, D. C. Howell, Ruby Lake Smith, a feme sole, E. C. Neeley and J. P. Pitner, is, according to the purport of plaintiff's petition, primarily one to remove cloud from plaintiff's title to 100 acres of land, described by metes and bounds.

The only facts alleged concerning the nature of the clouds on title were as follows: "Bettie F. Howell and husband, D. C. Howell, and Ruby Lake Smith are asserting or claiming some kind of interest in and to the oil and other mineral in said land by virtue of a reservation made in a deed of conveyance dated January 1, 1920, executed by Bettie F. Smith and Dixie Smith and wife, Ruby Lake Smith to W. C. Gordon and W. B. Ferrell as the same appears of record in volume 44, page 335 of the Deed Records of Scurry County, Texas,

*the extent and/or nature of such interest asserted or claimed by said parties being unknown to plaintiff."* (Italics ours.)

Then followed allegations to the effect that plaintiff had executed an oil and gas and mining lease upon the land to a third party "but the lessee has objected to the asserted claim and/or claims of defendants * * * [naming them as above] to a part of the oil, gas and minerals in the above described tract of land * * * which objection by said lessee and the asserted claims of defendants * * * creates a cloud upon the fee simple title to said land now owned by the ·plaintiff—and plaintiff has often requested defendants Bettie F. Howell and husband D. C. Howell ·and Ruby Lake Smith and each of them, to refrain from such asserted claims and that said defendants * * * and each. of them have refused and still refuse to satisfy and quiet plaintiff's title in ·and to the above described land and premises in an appropriate manner. * * * [That] the asserted claim of defendants * * * constitutes a cloud upon plaintiff's title to the land and premises hereinabové described ·and create a *doubt in the mind of this plaintiff* and all other persons who may be in privity with him *as to his right to make disposition of said lands and premises* * * * for the removal of which cloud this suit is brought." ·(Italics ours.)

. Then follows a plea of estoppel of said above-named defendants "to set up any claim in and to said land adverse to the title of this plaintiff." Apparently only as reasons why plaintiff should be quieted in .his title, and not as putting his title in issue, he alleged ownership of the· land by five and ten years' limitation. Finally and in the alternative plaintiff sought recovery of damages in the sum of $1,000 against all . the defendants, other than Ruby Lake Smith, for breach of covenants of warranty.

The defendants, except Ruby ·Lake Smith, filed disclaimers. Ruby Lake Smith answered by general and special exceptions and general denial. Further she alleged an agreement that the common source of title was Bettie F. Smith and Dixie Smith, and specially pleaded title in her from such common source, particularly through her deceased husband, Dixie Smith, to one-fourth of the. minerals in the land. The title so specially pleaded did· not include any title acquired by her subsequent to the death of Dixie. Smith or from any othèr source. Said defendant, treating the latter part of her answer, containing the special plea of title, as a cross-action, prayed that "she have judgment quieting the title to her undivided one fourth (1/4) interest in the oil, gas and other minerals in and under said land, and that the cloud cast upon the title of this defendant by the plaintiff by reason of his asserted claims be canceled and held for naught." As tending to show that by the cross-action *recovery* of the title to the ·one-fourth mineral interest was sought, it was further prayed "that this defendant and plaintiff in cross-action, have judgment against the plaintiff. John L. Greene for her undivided one fourth (1/4) .interest in the oil, gas and other minerals in and under such land", etc.

As to the defendants who answered by disclaimers, the final judgment provided that they "be dismissed from this suit without prejudice." It was further adjudged that "John L. Greene take nothing by his said suit as against the defendant, Ruby Lake Smith, and that defendant Ruby Lake Smith have judgment against the plaintiff John L. Greene quieting her title to said mineral interest in such land", etc.

Plaintiff John L. Greene appealed, but, by the terms of his appeal bond, did not include as appellees the defendants who had disclaimed.

Appellant asserts nine propositions as reasons for a reversal of the judgment. One ·element common to the "First", "Second", "Third", "Fourth", and "Sixth" propositions is that appellee pleaded a general demurrer and/or special exceptions to appellant's petition which, not being acted upon, ·or called to the attention of the court, were waived by appellee's motion for judgment in her favor upon the merits of the case. We cannot be sure we understand appellant's contentions upon this point. In the argument it is said: "It seems clear that the statement of the court in the case of Southern Cas. Co. v. Morgan [Tex.Com. App.] 16 S.W.2d 533, is in point on the question under this group of assignments and has application to each assignment wherein it is said 'general demurrer was pleaded but it was not presented and given . disposition, hence, it was waived' and this .statement of the law has application here." Said argument closes thus: "Therefore, appellant here urges that the action of the trial court in failing to dispose of the demurrer and exceptions presents fundamental error requiring reversal of the judgment

of the trial court." Does appellant thus contend that the judgment is erroneous because the court did not rule upon the general and/or special exceptions? If so, then it must be answered that if the court erred in such respects the error was against appellee, and appellant has no cause to complain of it. So far as possible, appellee waived such error, if any.

 Is it the appellant's contention that appellee, having waived her general demurrer and her special exceptions, the allegations of appellant's pleadings must be taken as true; and that when so taken as true, they had the effect of barring appellee's right to a judgment? If so, such position would seem to be wholly untenable. The allegations of pleadings, the sufficiency of which is challenged by exceptions, are taken as true, but only in testing the sufficiency of the pleadings as against the exceptions. If there is no ruling upon the exceptions the case stands, of course, the same as if no exceptions had been taken to the pleadings. The plaintiff would have the same burden of establishing his cause of action and the defendant his grounds of defense, or any counterclaim or cross-action. It should aways be borne in mind, however, that the mere failure of the plaintiff to establish any essential element of his cause of action requires a judgment for the defendant, regardless of affirmative defenses, or whether they be established or not. It is our conclusion that all of appellant's propositions except those hereinafter mentioned should be overruled.

By appellant's "Fifth Proposition" the judgment, considered as one granting affirmative relief to the appellee, is challenged on the ground that appellee "presented no evidence upon the trial in support of her answer." By the sixth proposition it is asserted "that the evidence presented by plaintiff John L. Greene was insufficient to support the judgment in favor of the defendant Ruby Lake Smith."

There was an agreement that the common source of title was Bettie F. Smith (Bettie F. Howell) and Dixie Smith—mother and son. By the undisputed evidence the following facts were established:

Title to approximately 1,000 acres of land, including the 100 acres in suit, except one-half the minerals therein, was conveyed by the agreed common source to Gordon and Ferrell. The title of Gordon and Ferrell was reconveyed to Bettie F. Howell. Ruby Lake Smith, upon the death of Dixie Smith,

succeeded to all his title and interest in the land. On August 4, 1924, by an exchange of deeds, Bettie F. Howell, joined by her husband, conveyed to Ruby Lake Smith, and Ruby Lake Smith conveyed to Bettie F. Howell, each a one-half undivided interest in the same land. On January 9, 1930, Bettie F. Howell and Ruby Lake Smith made a formal statement in writing and had it placed of record in which, as relating to the above-mentioned exchange of deeds, it was declared that it was done "to the end that each should be thereafter the owner of an undivided 1/2 interest in all of the properties mentioned in said deeds."

Thereafter on February 27, 1924, Bettie F. Howell, joined by her husband, conveyed, by warranty deed, 100 acres of the land described by metes and bounds, to E. C. Neeley. Neeley, by like deed, dated July 21, 1924, conveyed the same 100 acres to J. P. Pitner, and on September 12, 1931, Pitner conveyed it to John L. Greene. Each of said deeds purported to convey the entire interest in the 100 acres. The conveyances were made for a valuable consideration without notice of any defects in the title other than such notice, of course, as the several grantees were given by the records. On December 15, 1938, John L. Greene and wife executed an oil and gas lease on the 100 acres and objection was made to the title on the ground that there was an outstanding one-fourth mineral interest in Ruby Lake Smith. From the time of the conveyance of the 100 acres by Mrs. Bettie F. Howell to E. C. Neeley the title thereto was not questioned.

██ The question for our decision is: Does this evidence authorize the judgment providing that "defendant Ruby Lake Smith have judgment against the plaintiff John L. Greene quieting her title to said mineral interest in such land?" We think the evidence above recited established conclusively that the mineral reservation in the deed of Bettie F. Smith and Dixie Smith to Gordon and Ferrell was because of subsequent events rendered of no importance. It did not constitute a cloud upon appellant's title. Neither did it alone show title to a one-fourth mineral interest in appellee. It may be granted that at the death of Dixie Smith he had title to a one-fourth interest in the minerals, which, upon his death, descended to appellee. Subsequently Mrs. Bettie F. Howell was the owner of the land, less such one-fourth mineral interest. As to the mineral estate which had, by the

deed to Gordon and Ferrell, been severed from the rest of the land, Bettie F. Smith and appellee were tenants in common, the former owning three-fourths and the latter one-fourth. But the simultaneous exchange of deeds, mentioned in the above statement of the evidence, had these effects: (1) it reunited the mineral interest with the rest of the land and (2) constituted the parties tenants in common of all the land, each having a one-half undivided interest therein. The deeds so clearly had such effect that no statement thereafter made by both, or either, of the parties as to their intention could vary such effect. It is immaterial that before the exchange of deeds one grantee had more, and the other less, interest than their deeds purported to convey. The deeds vested in each grantee a one-half undivided interest by operation of the principle of estoppel by deed.

When, therefore, Bettie F. Howell, one of the two tenants in common, conveyed the specific 100 acres to Neeley, she conveyed legal title to only a one-half undivided interest, but equitable title to an undivided 100 acres interest in the entire tract owned in co-tenancy with Ruby Lake Smith. The effect of the evidence was to show that the particular claim of Ruby Lake Smith to a one-fourth undivided interest in the minerals by virtue of the reservation made in the deed from Bettie F. Smith and Dixie Smith to Gordon and Ferrell dated January 1, 1920, was in a sense, and by reason of a claim of title being asserted thereunder, a cloud upon appellant's title. The evidence at the same time had the curious effect of showing that in an entirely different way and without her specially pleaded title, appellee did have an interest in the land which was not merely a cloud upon appellant's title, but possibly to the extent thereof superior thereto.

On the other hand, the evidence considered in connection with appellee's cross-action showed that appellant's claim was not a mere cloud upon any title of the appellee entitling her to be quieted to any particular interest in the land. If the facts exist—which is not shown—to establish limitation title under the statutes of five and/or ten years, appellant may be the owner of the land in severalty. The issues of limitation were perhaps not developed, because of the theory that appellee's claim to a one-fourth mineral interest was an estate severed from the rest of the land, and, therefore, that adverse possession of the surface of the land did not constitute adverse possession of the minerals.

If the facts do not exist to show limitation title in appellant, he may be able to have it set aside to him, in severalty, in a partition proceeding to which the owners of the other interests in the entire tract are parties, by assuming and discharging the burden of showing that it will not be inequitable to do so. If he cannot discharge such burden, he may nevertheless be entitled to have his 100-acre interest set aside to him in a partition of the entire tract held in co-tenancy.

If none of said remedies are, under the facts, available, it would seem that he would at least have a cause of action against one or more, or all, of his grantors through whom the 100 acres has descended to him upon covenants of warranty of title.

It is our conclusion that the evidence would not warrant that part of the judgment providing that appellee be quieted in her title to a one-fourth mineral interest in said land, for which reason the judgment should be reversed and the cause remanded, and it is accordingly so ordered.